IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TREVOR G. MCKENZIE,                    )
       Plaintiff,                        )
                              )
       vs.                               )          Civil Action No. 12-1336
                              )
INTERNAL REVENUE SERVICE,              )
       Defendant.                        )
                              )

<u>MEMORANDUM OPINION</u>

Currently before the Court is a motion to dismiss for lack of subject matter jurisdiction, filed by Defendant, The United States of America (ECF No. 10).[1]  For the reasons that follow, the motion will be denied.

Plaintiff, Trevor G. McKenzie, brings this action against the Internal Revenue Service (IRS), seeking to have the IRS apply his alleged 2007 net operating carry back loss to offset his 2005 income tax liability and to have the IRS recalculate his tax liability for 2006, 2007, 2008, 2009, 2010 and 2011, which would result in tax refunds due to him for these years.  The United States opposes the suit on various jurisdictional grounds.

<u>Facts</u>

Plaintiff and his wife, Althea E. McKenzie, owed tax liabilities for 2004 and 2005.  (ECF No. 10 Exs. 1, 2.)  The IRS applied a 2007 carry back loss of $21,254.00 to their joint 2005 liability.  (ECF No. 10 Ex. 2 at 2.)  The United States indicates, however, that this carry back loss did not pay the 2004 or 2005 liabilities in full.  When Plaintiff and his wife overpaid their income

---

[1]     Although Plaintiff named the Internal Revenue Service, the only proper party in a tax refund action is the United States of America.  28 U.S.C. § 7422(f).

tax for the years 2006, 2007, 2008, 2009, 2010 and 2011, the IRS applied those overpayments to the outstanding 2004 and 2005 liabilities, which eventually paid the 2004 and 2005 liabilities in full.

The United States indicates that the overpayments and credits may be summarized as follows:

| Overpayment Tax Year | Date | Amount of Overpayment | Credit to Tax Year |
|---|---|---|---|
| 2006 (Ex. 3 at 4) | 4/15/07 | $5,282.23 | 2005 |
| 2007 (Ex. 4 at 1) | 4/15/08 | $4,968.00 | 2004 |
| 2007 (Ex. 4 at 1) | 6/23/08 | $1,200.00 | 2004 |
| 2008 (Ex. 5 at 1) | 4/15/09 | $2,700.01 | 2004 |
| 2008 (Ex. 5 at 1) | 4/15/09 | $4,264.99 | 2005 |
| 2009 (Ex. 6 at 1) | 4/5/10 | $5,134.00 | 2005 |
| 2009 (Ex. 6 at 1) | 4/15/10 | $7,816.00 | 2005 |
| 2010 (Ex. 7 at 1) | 4/15/11 | $7,960.00 | 2005 |
| 2011 (Ex. 8 at 1) | 4/15/12 | $2,881.00 | 2005 |

Plaintiff indicates that he suffered losses of $150,000.00 in 2007; that in 2008, after reviewing his 2007 financial reports from the auditors, it became evident that his financial difficulties were more severe than he had imagined; that as he filed his 2007 tax returns, he also filed an amendment to apply 2007 losses to offset the 2005 tax liability with 2007 losses; and that, he began communicating with the IRS to seek guidance in filing the amendment.  (Compl. ¶¶ 3-4.)  Plaintiff states that, after several years of communicating with the IRS by telephone

calls (during which representatives would promise to get back to him within four weeks but then would fail to do so) he was advised in 2010 to contact a tax advocate agent.  An agent named Derek Allen told him that allotted times do not expire while an individual is engaged in the dispute/resolution process.  Plaintiff submitted the documents Allen requested, but the long intermittent periods continued.  On May 16, 2011, Plaintiff sent a letter to Douglas Shulman, the Commissioner of the IRS, to review the history of the matter and ask for assistance.  He stated that, although he corrected his 2005 and 2007 returns according to the tax advocate's direction, the IRS continued to tell him something was wrong, but would not explain what was wrong. (Compl. ¶ 6 & Ex. A.)

Plaintiff states that the Commissioner assigned the case to Charles Mangene in the Pittsburgh tax advocate office.  Plaintiff met with Mangene at least twice in his office with all his documents and showed proof of his good-faith efforts to voluntarily resolve this matter.  In addition, he sent faxes to Mangene on numerous occasions.  By this time, he had lost and exhausted all of his financial resources and had filed for bankruptcy.  Plaintiff states that Mangene at first expressed confidence that he could resolve the matter, but later grew frustrated and admitted that he was not an expert in the net operating loss carry back calculations. Mangene reported that each time he waited for the IRS's response, he was told he needed something else or something was not matching and no one seemed to know what the IRS was looking for.  (Compl. ¶¶ 7-8 & Ex. E at 1.)  For example, on September 16, 2008, Plaintiff submitted a Form 1045, Application for Tentative Refund, to apply a carryback loss from 2007 to his 2005 liability, but on October 2, 2008, the Form was returned to him "for additional information required for processing."  (Compl. Ex. C at 9.)  Subsequently, Joyce Thompson took

over after Mangene took a new position.  (Compl. Ex. E at 5-8.)

In the meantime, IRS collection agent Angela Davis continued collection activities.

When Plaintiff contacted her, she suggested he should take his case to the appeals agency of the

IRS.  (Compl. ¶ 9 & Ex. B.)  Then he received another collection notice from appeals agent Alan

B. Eddelman.  Eddelman asked for proof that Plaintiff submitted "1040X NOL filing for 2007

and ignores or omits any reference to communicating with any of the previous IRS employees

who were involved with the failure to help me resolve this issue way before the expiration date of

4/28/2011 that he referenced in his last letter to me."  (Compl. ¶ 10 & Ex. E at 2-4.)

Procedural History

Plaintiff filed this action on September 18, 2012.  The complaint seeks: 1) an order

requiring the IRS to apply his alleged 2007 carry back loss to offset his 2005 income tax liability;

and 2) an order requiring the IRS to recalculate his tax liabilities for years 2006 to 2011, which, if

done, would result in tax refunds due to him for these years.

He indicates that:

> Most importantly I am asking the Court to understand specifically that the IRS,
> with its power and authority has put me in a position where it has asked me for
> something that I cannot possibl[y] provide without its cooperation, which it has
> failed to do—even with the efforts of its Tax advocates whom I provided
> countless documents and correction of documents to no avail.  The IRS and its
> agents would now seek to penalize me in as much as I cannot do anything to help
> myself because it contend[s] that the amendments and corrections do not match
> their records—which appears to be code word for "the IRS did not receive any
> response from me in accordance with the letter from Alan B Edelman—the Tax
> appeals officer.  I am hopeful that the Court will agree with me that this was a
> grave miscarriage of justice.

(Compl. at 5.)

On January 18, 2013, Defendant filed a motion to dismiss for lack of subject matter

4

jurisdiction.  Plaintiff filed a response on February 12, 2013.

Standard of Review

Dismissal for lack of subject matter jurisdiction is not appropriate on the ground that a complaint fails to state a claim upon which relief can be granted, but only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)).  "The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The first issue a court must decide in reviewing a Rule 12(b)(1) motion is whether the challenge to the court's subject matter jurisdiction is a facial or factual attack.  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff.  In reviewing a factual attack, the court may consider evidence outside the pleadings."  Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (footnote and citations omitted).  "Facial attacks ... contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."  Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation omitted).

Defendant asserts that it is raising a factual attack and has submitted evidence outside the pleadings to be considered.  The Court concludes that the motion raises a factual attack and that this evidence may be considered.

The United States argues that: 1) Plaintiff has failed to include a necessary party, his wife, as a plaintiff to this action; 2) he alleges no basis for jurisdiction or waiver of the government's immunity; 3) he failed to file an amended return by April 15, 2011, three years from the date the tax liability for 2007 became due; 4) he fails to allege that he filed administrative claims for the years 2006 to 2011; 5) he fails to set forth the amount of refund sought; 6) the IRS has already credited $21,254 carry back loss from 2007 to his 2005 liability and he cannot apply for more because the statute of limitations for amending his 2007 return has expired; and 7) he asks the Court to order the IRS to apply his 2007 carry back loss to offset his 2005 liability and to recalculate his liabilities for the years 2006 to 2011, which would enjoin the IRS from collecting taxes from 2004 and 2005, but such relief is barred by the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

In response, Plaintiff moves to add his wife as a plaintiff to this action and states that the specific amount he is seeking is $21,750.00, that is, net operating losses of $88,209.00 less the amount that has been used to date ($66,459.00).  (ECF No. 14 ¶¶ 16-19 & Attach. 1 at 4.)  In addition, it is noted that the complaint gave the United States sufficient notice of the fact that Plaintiff was alleging a cause of action for a tax refund and that pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers.  Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).  See Chocallo v. Internal Revenue Serv. Dep't of the Treasury, 145 F. App'x 746, 747 n.1 (3d Cir. 2005) (rejecting argument that court should dismiss pro se tax refund suit on the ground that it named IRS rather than the United States as the defendant).

Title 28 of the United States Code provides that district courts shall have original

6

jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws…

28 U.S.C. § 1346(a)(1).  This statute serves as the basis for jurisdiction and 26 U.S.C.

§ 7422 (cited below) serves as a waiver of the government's immunity.  In addition,

Plaintiff's claim is for a refund, a permissible form of relief, and the Court need not

address the argument that he also appears to be requesting injunctive relief which would

be barred by the Anti-Injunction Act and the Declaratory Injunction Act.  The other

arguments made by the United States are addressed below.

The Supreme Court has held that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims.  28 U.S.C. § 1346(a)(1); EC Term of Years Trust v. United States, 550 U.S. 429, 431, and n. 2, 127 S.Ct. 1763, 1766 n. 2, 167 L.Ed.2d 729 (2007).  The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code.  United States v. Dalm, 494 U.S. 596, 609-610, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).  That scheme provides that a claim for a refund must be filed with the Internal Revenue Service before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 4 (2008).  Specifically, section

7422(a) provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and regulations of the Secretary established in pursuance thereof.

7

26 U.S.C. § 7422(a).

Internal Revenue Code section 6511 provides that:

> Period of limitation on filing claim.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. § 6511(a). "Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' § 1346(a)(1), 7422(a), may not be maintained in any court." Dalm, 494 U.S. at 602 (citation omitted).

With respect to a claim for credit or refund relating to an overpayment attributable to a net operating loss carry back:

> If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later. In the case of such a claim, the amount of the credit or refund may exceed the portion of the tax paid within the period provided in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to such carryback.

26 U.S.C. § 6511(d)(2)(A).

The Supreme Court has explained that:

> A "net operating loss" results from deductions in excess of gross income

8

> for a given year. 26 U.S.C. § 172(c). Under § 172(b)(1)(A), a taxpayer may carry
> its net operating loss either backward to past tax years or forward to future tax
> years in order to "set off its lean years against its lush years, and to strike
> something like an average taxable income computed over a period longer than one
> year," Libson Shops, Inc. v. Koehler, 353 U.S. 382, 386, 77 S.Ct. 990, 1 L.Ed.2d
> 924 (1957).

United Dominion Indus., Inc. v. United States, 532 U.S. 822, 825 (2001) (footnote omitted).

Generally, a claim for credit or refund is made by filing a formal claim on a form such as an amended return. See 26 C.F.R. § 301.6402-3(a)(2) ("In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ('Amended U.S. Individual Income Tax Return')." The United States argues that Plaintiff did not submit an amended return for tax year 2007 by April 15, 2011, and thus his claim is time barred. (ECF No. 10 Ex. 4.) Plaintiff does not appear to contest this point.

However, a request for a refund may be made informally. See Tucker v. Alexander, 275 U.S. 228, 231 (1927); D'Amelio v. United States, 679 F.2d 313, 315 (3d Cir. 1982). Thus, the lack of an amended return on Form 1040X does not resolve the question of whether Plaintiff made an informal request for a refund for 2007.

The Court of Appeals has stated that:

> It is not necessary that a claim for refund or credit be submitted to the Internal
> Revenue Service in any particular form. If a taxpayer submits to the Internal
> Revenue Service some sort of written instrument which informs the
> administrative agency that the taxpayer believes that he has been subjected to an
> erroneous or illegal tax exaction, and that he desires a refund or credit because of
> such action, this is sufficient.

D'Amelio, 679 F.2d at 315 (quoting Barenfeld v. United States, 442 F.2d 371, 374 (Ct. Cl. 1971)). Plaintiff submitted to the IRS: an Application for Tentative Refund, faxes and letters and

he indicates that he spoke to individuals on the phone on many occasions.

An Application for Tentative Refund for an individual is made on Form 1045.  However, the Internal Revenue Code states that an application for a tentative carryback adjustment "shall not constitute a claim for credit or refund."  26 U.S.C. § 6411(a).  In addition, IRS regulations explicitly state that:

> An application for a tentative carryback adjustment does not constitute a claim for credit or refund. If such application is disallowed by the district director or director of a service center in whole or in part, no suit may be maintained in any court for the recovery of any tax based on such application. The filing of an application for a tentative carryback adjustment will not constitute the filing of a claim for credit or refund within the meaning of section 6511 for purposes of determining whether a claim for credit or refund was filed prior to the expiration of the applicable period of limitation. The taxpayer, however, may file a claim for credit or refund under section 6402 at any time prior to the expiration of the applicable period of limitation, and may maintain a suit based on such claim if it is disallowed or if the district director or director of a service center does not act on the claim within 6 months from the date it is filed. Such claim may be filed before, simultaneously with, or after the filing of the application for a tentative carryback adjustment. A claim for credit or refund under section 6402 filed after the filing of an application for a tentative carryback adjustment is not to be considered an amendment of such application. Such claim, however, in proper cases may constitute an amendment to a prior claim filed under section 6402.

26 C.F.R. § 1.6411-1(b)(2).  Based upon this language, numerous courts have held that an application for tentative refund does not constitute an "informal claim" for purposes of satisfying section 7422's administrative exhaustion requirement.  See Kirsh v. United States, 131 F. Supp. 2d 389, 391 (S.D.N.Y. 2000), aff'd, 258 F.3d 131 (2d Cir. 2001); Crismon v. United States, 550 F.2d 1205, 1206 (9th Cir. 1977); Thomson v. United States, 1999 WL 314827, at *4 (Fed. Cl. Apr. 13, 1999); I.C.T.S. U.S.A., Inc. v. United States, 2007 WL 512791, at *2 (S.D.N.Y. Feb. 15, 2007) (finding that Form 1139, the application for refund form for corporations, did not constitute an "informal claim"); EMAX Fin. Group v. Unites States Virgin Islands, 2012 WL

1190470, at *6 (D.V.I. March 31, 2012) (same).

On the other hand, letters to the IRS may constitute an informal claim.  In <u>EMAX</u>, the court noted that the Internal Revenue Code and regulations require the IRS  to make a "limited examination" of an application for tentative carryback adjustment to check for mathematical errors within 90 days.  26 U.S.C. § 6411(b); 26 C.F.R. § 1.6411-3(b).  Thus, a letter sent after that 90-day period that informed the IRS that a claim for refund was being asserted and the amount sought was sufficient to constitute an informal claim.  2012 WL 1190470, at *8-9.

In this case, Plaintiff has submitted evidence that he wrote to various individuals on numerous occasions to request the carryback loss and to respond to requests to provide additional information regarding his claim.  He sent numerous faxes to Mangene.  The United States has not addressed any of this evidence.  Under these circumstances, the Court concludes that Plaintiff submitted a claim for refund, albeit an informal one, prior to April 15, 2011.  Therefore, the United States's motion to dismiss based upon his failure to present a request for refund will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TREVOR G. MCKENZIE, )
           Plaintiff, )
 )
       vs. )      Civil Action No. 12-1336
 )
INTERNAL REVENUE SERVICE, )
           Defendant. )
 )

ORDER

AND NOW, this 20th day of March, 2013,

It is hereby ordered that the motion to dismiss for lack of subject matter jurisdiction, filed

by the United States of America, is denied.


                    s/Robert C. Mitchell_____
                    ROBERT C. MITCHELL
                    United States Magistrate Judge


cc:   Trevor G. McKenzie
      11911 North Street
      North Huntingdon, PA 15642

12